IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 17-cv-0753-WJM

FRED JAMES GALLEGOS,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

**ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE**

    This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Fred James Gallegos ("Gallegos") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Gallegos was not disabled within the meaning of the Social Security Act before his date last insured. This appeal followed.

    For the reasons set forth below, the ALJ's decision is vacated and this case is remanded to the Commissioner for further proceedings consistent with this order.

## I. BACKGROUND

    Mooring was born in 1967 and was 46 years old on the amended alleged onset date of December 4, 2013. (Administrative Record ("R.") (ECF No. 13) at 5, 606.) His educational achievements are unclear. However, in the fifteen years preceding the alleged onset date, he worked as a building maintenance laborer, a machine operator, a

night trainer, a warehouseman, and a construction laborer. (R. at 617–18.)

Gallegos applied for disability insurance benefits on December 6, 2013. (R. at 606.) He claimed that he is disabled due to a worsening heart condition, diabetes, hypertension, low back pain, fatigue, hypothyroidism, sciatica, herniated discs, high cholesterol, temporomandibular joint disease, tinnitus, depression, anxiety, and pain radiating from his low back into his buttocks and legs. (R. at 606–07.) His application was denied on July 2, 2014. (R. at 619.) He requested and received a hearing in front of an ALJ, Kelley Day. (R. at 533–83.) On November 23, 2015, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]

At step one, the ALJ found that Gallegos had not engaged in substantial gainful activity from December 4, 2013, through his date last insured, June 30, 2014. (R. at 485.)

At step two, the ALJ found that Gallegos, "through the date last insured," suffered from "the following severe impairments: degenerative lumbar disc disease with fusion, degenerative cervical disc disease, coronary artery disease, mood disorder, [and] anxiety disorder." (*Id.*)

At step three, the ALJ found that Gallegos's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations. (*Id.*)

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Before proceeding to step four, the ALJ assessed Gallegos's residual functional capacity ("RFC") as of the date last insured. The ALJ concluded that Gallegos has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that he required the use of an ambulatory aid. He was limited to occasional balancing, stooping, and climbing ramps and stairs; no kneeling, crouching, crawling, or climbing ropes, ladders, or scaffolds; and could not have exposure to hazards such as unprotected heights and moving mechanical equipment. He was able to sit for 30 minutes consecutively before standing for up to 5 minutes while remaining on task. Mentally, he was able to do simple, repetitive work with only occasional contact with coworkers and supervisors and no contact with the public

(R. at 487.) Then, at step four, the ALJ concluded that Gallegos could not have performed any of his past relevant work, as of the date last insured, in light of this RFC. (R. at 495.)

At step five, the ALJ found that Gallegos's RFC would have permitted him to work as a "Final Assembler Optical," an "Assembler Buttons, Notions," and an "Addressor"; and that each of these jobs exists in sufficient numbers in the regional and national economy. (R. at 495–96.)

Accordingly, the ALJ found that Gallegos was not entitled to Social Security benefits. (R. at 496–97.) Gallegos appealed to the Socials Security Appeals Council (R. at 446), which denied review (R. at 1). Gallegos then filed this action seeking review of the ALJ's November 23, 2015 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

3

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

Gallegos's disability application presented a somewhat unusual circumstance because, all parties agree, his Title II disability insurance benefits lapsed on June 30, 2014. (*See* R. at 483 ("The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2014 (hereinafter 'the date last insured').").) *See also* 42 U.S.C. § 423. Accordingly, Gallegos was required to "establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (R. at 483.) Apparently because of this requirement, the ALJ's analysis focused almost entirely on medical evidence generated before June 30, 2014.

Regarding that medical evidence, of particular note to the analysis below is the following, relating to allegedly disabling pain radiating from Gallegos's low back into his legs:

- On May 6, 2013, Gallegos underwent an MRI of the lumbar spine.

4

Regarding the L5-S1 joint, the radiologist reported, "The disc is degenerated with mild bulging of the annulus. There is facet arthropathy. There is no neural compressive lesion." (R. at 826.)

- On January 13, 2014, Gallegos underwent a discogram procedure (injection of x-ray-visible fluid into the spinal disc) for three of his spinal joints, including L5-S1. The pressure of the fluid in that joint created "[n]on-concordant pain . . . described [by Gallegos] as 'different than usual.'" A CT scan conducted immediately post-procedure revealed a grade 5 annular tear. (R. at 931–32.)[2]

- On April 22, 2014, Gallegos met with a spinal surgeon, Dr. George Frey, to explore an L5-S1 fusion procedure. At this visit, Dr. Frey gave his assessment of Gallegos's May 2013 MRI, including "severe right L5-S1 facet arthrosis." Dr. Frey also considered the January 2014 discogram to have established the L5-S1 disc as "a confirmed pain generator." And "[m]oderate stenosis of the foramen at the right L5-S1 hypertrophied facet may contribute to [Gallegos's symptoms] as well." Given the failure of conservative therapies, Dr. Frey opined that surgery was Gallegos's "only real option, but with limited expectations. The reality of only partial relief of the [symptoms was] frankly discussed." Gallegos elected to go forward with surgery. (R. at 1168–71.)

- On May 7, 2014, Dr. Frey performed a posterior spinal fusion of the L5-S1 joint. (R. at 1076–79.)

---

[2] Grade 5 is the most severe. (*See* ECF No. 17 at 11 n.2.)

- On June 3, 2014, Gallegos visited a physician who had been treating him for suspected diabetes (which was ruled out at this visit). This physician's treatment record notes the spinal fusion procedure from the previous month and states that Dr. Frey "said [Gallegos's] back was a lot worse than [the] MRI had show[n]." (R. at 1336.)

On June 30, 2014, a state agency consulting physician, Dr. David Bristow, reviewed Gallegos's medical records to-date and offered his assessment. (R. at 614–17.) Dr. Bristow's summary of the medical records left out all of the foregoing, except that he mentions the MRI (but only for the fact that it "did not demonstrate a herniated disc") and notes the surgery. (R. at 615.) Regarding that surgery, he states, "It is expected with continued healing and recovery [that Gallegos] will be able to function within the limits of [the RFC Dr. Bristow would assess] 12 months after [Gallegos's alleged onset date, *i.e.*, by November 15, 2014]." (R. at 615, 616.)[3]

As for that RFC, Dr. Bristow limited Gallegos to lifting 20 pounds occasionally; 10 pounds frequently; standing and/or walking for a total of 4 hours in a workday; sitting for 6 hours in a workday; occasionally climbing ramps or stairs; never climbing ladders ropes or scaffolds; frequently balancing; and occasionally stooping, kneeling, crouching, and crawling. (R. at 616.) Based on this RFC, the first-level disability examiner determined that Gallegos could still perform certain jobs and denied Gallegos's disability claim, explaining, "Although your condition is currently severe, it is expected to improve. We

---

[3] Gallegos originally alleged an onset date of November 16, 2013. (R. at 606.) At Gallegos's hearing before the ALJ, his attorney amended that onset date to December 4, 2013. (R. at 535.) But, at the time Dr. Bristow provided his opinion, the alleged onset date was still November 16, 2013. For unclear (but immaterial) reasons, Dr. Bristow specified November 15, 2014 (rather than November 16) as the one-year anniversary of that date. (R. at 616.)

6

have determined that your condition is not expected to remain severe enough for 12 months in a row to keep you from working." (R. at 618.)  *Cf.* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

Following a hearing, the ALJ adopted most of Dr. Bristow's RFC.  (*See* R. at 487.)  In the ALJ's view, Dr. Bristow's opinion deserved

> substantial weight because the doctor is a highly qualified physician with knowledge of the rules and regulations regarding Social Security disability assessments who thoroughly examined and evaluated all of the claimant's medical records to the date last insured, he explained his opinion with reference to specific medical signs and findings in the record, and his opinion is consistent with the evidence.

(R. at 492.)  But, said the ALJ, "considerable medical evidence was received after this assessment," from which the ALJ determined that Gallegos must be allowed an ambulatory aid (*i.e.*, a cane or a walker), and be allowed to stand up every 30 minutes for about 5 minutes while remaining on task.  (R. at 487, 492–93.)[4]

Gallegos argues that the ALJ improperly gave substantial weight to Dr. Bristow's opinion and RFC.  Gallegos's argument is twofold.  First, Gallegos argues that the ALJ was simply wrong to have concluded that Dr. Bristow "thoroughly examined and evaluated all of the claimant's medical records to the date last insured."  (R. at 492.)  Second, Gallegos argues that the ALJ improperly ignored evidence postdating June 30, 2014, which showed that Dr. Bristow's prediction regarding Gallegos's recovery was

---

[4] The ALJ also added limitations regarding contact with coworkers, supervisors, and the public, which are not relevant to this disposition.  (R. at 487.)

incorrect.[5]

The Court agrees with Gallegos's first argument.  Dr. Bristow did not thoroughly examine the medical evidence and did not render an opinion consistent with that evidence.  In particular, he left out the most salient exam findings, *i.e.*, the results of the MRI and discogram with respect to the L5-S1 joint, Dr. Frey's opinion that it was a "confirmed pain generator" (R. at 1170), and Dr. Frey's post-surgical observation that the L5-S1 joint was in an even worse condition than the MRI revealed.  Because the ALJ based her RFC largely on Dr. Bristow's opinion, the ALJ's RFC was, in effect, unsupported, and so the ALJ had no basis from which to compare that RFC to Gallegos's past relevant work or any available types of employment.

The Court also agrees with Gallegos's second argument.  The question of whether Gallegos was disabled on or before June 30, 2014 does not limit the scope of relevant evidence to clinical signs and findings and opinions rendered on or before June 30, 2014.  "[T]he expiration of insured status is not itself a consideration in determining when disability first began . . . ."  SSR 83-20, 1983 WL 31249, at *1; *see also Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."); *Hurdis v. Colvin*, 2014 WL 6982298, at *9 (W.D. Wis. Dec. 10, 2014) (Social Security regulations defining "evidence" broadly "suggest[] it is error for an ALJ to ignore evidence in the administrative record bearing on . . . claimed disabilities simply because it . . . postdates [the claimant's] last date of insurance").  The ALJ, however, repeatedly stated her reliance on evidence that predated the date last

---

[5] Gallegos's condition has only worsened, requiring additional lumbar surgery, and he is now in a nursing home.  (*See* ECF No. 17 at 15–18.)

insured, and her rejection of later-generated evidence.  (*See* R. at 488–94.)  This means that the ALJ willfully blinded herself to the fact that Gallegos did not in fact ultimately recover—an explicit condition of Dr. Bristow's RFC.  And, more generally, it ignores the possibility that evidence postdating June 30, 2014 might shed light on whether Gallegos's condition had already reached a disabling state by June 30, 2014.

Remand is required so that the ALJ may properly weigh all of the relevant evidence.  The Court vacates and remands for this reason only; the Court does not address Gallegos's additional argument (*see* ECF No. 17 at 27–33) regarding the ALJ's formulation of his mental RFC.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).  The Court expresses no opinion as to Gallegos's other argument and neither party should take the Court's silence as tacit approval or disapproval of that argument.  The Court also does not intend by this opinion to suggest the result that should be reached on remand.  Rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 20th day of February, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge